For the record, on behalf of the petitioner, Apollon Donna Burns, may it please the court and counsel. Justices, I appear before your honors today following the entry of a judgment for dissolution of marriage that failed to follow the statutory mandates and had erroneous legal conclusions that resulted in ultimate determinations against the manifest weight of the evidence or abuse of discretion. Turning first to the most important financial piece of this case, Ms. Beck Burns' entitlement to maintenance, the circuit court's mere musings during counsel's closing arguments failed to meet the statutory mandates of Section 504 as amended, the circuit court failed to make the necessary statutory findings about what the guideline amount of maintenance would be, and failed to make any factual findings as to its reason for deviation therefrom. However, there is no basis in the record for the court to have reduced Ms. Burns' entitlement to maintenance by approximately half, when that is by far and away the largest financial component to this case. Ms. Donna Beck Burns calculated the guideline maintenance amount of $1,900, which properly included Mr. Burns' bonus, which was failed to be included from his calculation. It did not impute any income to her, because there is no basis on this record to impute income to her. Yet, the circuit court, without making any findings, as required by Section 504, determined that $1,000 would be appropriate. Certainly, there are a number of conclusions that must have been made. Under anybody's calculations, the circuit court deviated downward from what guidelines would be. Mr. Burns had a range of calculations, imputing income to her and failing to include his bonus, and she had a calculation based on her actual income and his actual income, as well as a backup calculation in case the court determined that imputation was appropriate. However, as you look at the Gosney factors, none of which were proven in this case, there was no basis to impute income. You had a wife and a mother who raised children who had additional needs throughout the course of the marriage, including homeschooling, and had purchased domains which were unsuccessful. There was testimonies for the reasons that those did not occur. She simply had no basis to support herself, and that is evident by the fact that she incurred significant debt during the pendency of proceedings in which she was not receiving temporary support. While Mr. Burns went to Indiana to seek to file a case there, despite both of the parties residing in Illinois at the time, and forcing the Indiana court to kick it out for lack of jurisdiction, likely because the maintenance laws in Indiana are more favorable to pay orders than here in Illinois, all that time Mr. Burns was sitting without maintenance, without support, without anything, and yet the circuit court determined that it would go lower than what either party said was appropriate, without making any findings therefore. When section 504 was amended following the 2016 amendments, justices, it was amended to require more from our circuit courts. It was amended to require specific findings of fact. While cases that predate the amendments found the courts under their general equitable powers could make a determination without making specific findings of fact, our legislature acted in response to that, to require more from our circuit court judges, to require that our judges make the requisite findings, and when a judge fails to make the requisite findings. Reversal is appropriate, and we saw that in the case of interim support in marriage of Nash. Reversal for what purpose? Tell me the rest of that relief. If you're arguing for reversal, what is the rest of that relief? Justice? What are we asking the trial court to do? The maintenance determination I would first and foremost suggest to your honors, under 366, you should award maintenance in the only guideline calculation that was presented based on their actual incomes. But here's where we have a little tension between your positions. You're telling us we don't have the findings to review the case, but that suggests you want us to make a different conclusion. So which is it? Do we have the findings enough to address the merits, or don't we? As a threshold matter, the circuit court absolutely erred in failing to follow the statutory requirements to make the necessary findings of what guideline maintenance would be, and its reasons for deviation therefrom. However, guideline maintenance can be extrapolated by this court. I'm not sure that's what the justice asked me. I'm sorry, Justice Ferrier, what I was suggesting was that there is sufficient basis in the record to make a determination as to what guideline would be. I agree with the justices that we are in many ways hamstrung because the circuit court did not do what it is legally obligated to do with respect to maintenance. So I guess the question is, are we sending it back for the judge to make the findings and see if then the decisions, if they remain the same, are supported by the findings, or are we reversing because he didn't make the findings and then you want us to make the final determination? My initial position, Justice Dougherty, would be that because the law presumes that guideline maintenance would be appropriate, because there is no basis in this record to deviate from what our legislature presumes to be equitable, that's why I would suggest that the justices should start, and pursuant to 366, remand with directions to calculate maintenance in accordance with the statutory guidelines. However... There's no additional evidence, correct? Correct, Justice Turner, I believe there is sufficient evidence to calculate a guideline maintenance amount because her actual income is in the record as well as his actual income. The court also has to consider earning potential, doesn't it? Realistic earning potential, Justice Dougherty, absolutely. Ability is what the statute speaks to. Your Honor, an absolutely corrected ability as to what the statute speaks to. However, when you look at cases where income is imputed, what a circuit court cannot do is substitute what is historical evidence for what it thinks somebody should be making, not based on what they are actually making. Merit of Gosney directs that unless a maintenance recipient is unreasonably failing to take advantage of opportunities that are available, purposefully underemploying oneself, or purposefully failing to avail oneself the opportunity to be reasonably employed, imputation is not appropriate in the first instance. However, both parties, when including an imputed number to Ms. Burns, came up with a number higher than what the circuit court determined. And Mr. Burns also failed to include his bonus, which Merit of Anderson directs is absolutely income for purposes of... Now this isn't a maintenance question, but this is a question about valuations. I thought I understood it regarding his pension or the value of the pension. He said, well, it was, and I think it's now. What is it? I think it's now or we actually know? Well, Justice Connacht, both in respondent's testimony and in his closing arguments, he suggested that it's 401k, which is what I believe. 401k. I believe you're referring to, was $10,000 higher than what the circuit court valued it at. The circuit court arbitrarily ignored $10,000 in marital funds that accrued between April and the time that the judgment was ended. And how did he know that those accrued? Because he has access to his 401k statements. Their statements were actually present. The statements were not introduced into evidence. By my understanding, Justice Connacht, however, he testified based on his knowledge, based on what the statements showed. I misconstrued the facts, but I thought the trial court valued the 401k based upon what was in it on April 29, 2021. Correct, Justice Turner. You read the record correctly, that between April 29th and the time that the circuit court ultimately entered judgment, the circuit court only ignored the marital increase during the time that the party- But it is within the circuit court's discretion to choose that date, if the court found that to be the appropriate date. That's what the... I kind of followed the cases and the statutory schemes that have developed, and it seems like to me it's within the court's discretion. So why would we find that the court picking April 29, 2021 to be an abuse of discretion? In other words, why would the opposite conclusion be clearly apparent? Well, first and foremost, Justice Turner, the basis for the court's exercise of discretion and the court's use of valuation as mandated by Section 503, the findings that are necessary pursuant to Section 503 were not made in this case. So, Justice Turner, we are to figure out why the circuit court ignored months and months and months of marital increase. The appellee respondent set out suppositions in their brief that it was to punish Ms. Burns for seeking a continuance. However, that smacks to me of a fault determination and a suggestion that a property, that marital property was omitted from the judgment. Marital increase between April and time of divorce. That is, whether or not the court had discretion to pick a valuation date, I do not respectfully think that the circuit court has the discretion to ignore marital property, to fail to acknowledge marital property. It's the only thing when the court picks the date, I mean, the value can go up, the value can go down. It's just a question of when you punch your ticket, right? So, it's easy for somebody to say, oh, you should have done it at the date that favors me. Well, we're looking at whether it's within his discretion to have picked the earlier date. There is, Justice Doherty, no basis articulated to exercise this discretion. This is worse even than marriage of Mathis, which we know five... Well, the basis would be because he picked the date when I think the grounds were initially heard. So, there would be a basis there. And by the way, a second ago, I think I gave you the standard of review for Manifest Way to actually for abuse of discretion would be, could any reasonable person take the view adopted? It's kind of a matter of semantics, but I did want to correct that. But anyway, to get back to my point, there was a basis, it seems to me, for the court to choose the date that it chose. Well, Justice Turner, I believe you are reading into the record what you believe the circuit court's basis was. That is not found in the judgment. There is no finding in the judgment as to the date of evaluation, as to the amount of evaluation, as to the reason that that date was selected, and all of the marital increase was ignored. Didn't you say, I'm choosing that date because that's the date of dissolution? Put aside whether that's a correct statement, but it sounds like it's exactly what Justice Turner is saying. The next one, he would have been hearing the evidence. I agree. Well, this court heard bifurcated testimony. First heard evidence on grounds. However, the judgment entering on grounds was not entered in equal. The court heard testimony of grounds in equal. However, we know that the statute was amended following Mathis, seemingly to suggest that if what the circuit court did was tie its valuation date to the basis of grounds, then seemingly we are suggesting to the legislature, I know you amended the statute in response to Mathis, where we found that this is what a circuit court was required to do. However, notwithstanding your amendment, a circuit court can still do exactly what it did in Mathis under the guise of discretion. Respectfully, I believe when the legislature acts to amend the statute in response to what the judiciary does, it is demonstrating the bounds of the judge's discretion. And when the circuit court acts in the manner that the legislature amended the statute to remedy, I would respectfully suggest it hasn't used its discretion. Can we talk about temporary maintenance? We can, Justice Dougherty. Your client argued, instead of temporary maintenance, just give me the money I loaned to support myself, or I borrowed to support myself. And the trial court didn't either, and I get that's your problem. You didn't give them much help, or trial counsel didn't. Because at the end of announcing his decision, he says, have I got it all? Did I miss it all? Did I miss anything? Everybody says, no, all good, Judge. And then an order is submitted where that's also omitted from any mention. Is that preserved? Is that issue preserved? Yes, Justice Dougherty. Because this was a bench trial and not a jury trial, there is no requirement that a motion to reconsider or a post-judgment motion be submitted, whether that is oral or not. You're right. You're right about that. But without it, you haven't really told the judge, you made a mistake here. You, in fact, said, you got it all, and the judge asked. Justice Dougherty, I believe in a dissolution proceeding in a bench trial, the role of counsel is to make your argument during closing argument, and then let the circuit court rule. If a judge, there have been plenty of times I've stepped forward. Is your role to say, yes, when the judge says, have I got everything? If, in fact, you know he hasn't? The serving complaint about an unappealable. I respectfully believe that raising the argument in your closing argument, that filing it in your initial pleading, that filing a subsequent pleading, asking for the relief, arguing it, putting it in a financial affidavit, all of these steps along the way continue to preserve the argument through and including that closing argument. I do not believe there is a subsequent requirement that counsel go back and correct the circuit at the time it makes its oral ruling. I think that suggests that that is akin to a post-trial motion. Whether you say it orally or directly. It's a little different, though, when you affirmatively said, yep, you've got it. You've got what you need there, Judge. Justice Dougherty, I just simply do not believe that counsel has a subsequent requirement to re-argue a closing argument. There's a difference between requirement and what might be good practice. Absolutely, Justice Kinect. I believe it would be best practice to, there are those cases that talk about preservation that say, Judge, I think you have it wrong and the law is sufficient to preserve. Right? So if you follow that line of cases, certainly it would be absolutely best practice to at the conclusion, every time the judge makes a mistake, to identify the mistake that you believe that the judge made. I don't think every time is going to serve you well in the trial court, but on issues that you know are going to be, have the potential to be raised on appeal, it would save a lot of judicial time. It would save an appeal, perhaps. Perhaps. However, for the circuit court to change its mind, it necessarily would be reconsidering its order. Your position is it hadn't made up its mind. Your position is it missed something. And when you asked, or your trial counsel was asked, have I got it all? The answer wasn't, I don't know, or it's not my job to tell you, Judge. It was, yes. And Justice Dory, to Justice Knapp's point, I think that when you speak of best practices, that is absolutely not best practices. However, I do not believe that the bar for preservation is that trial counsel follow best practices every step of the way. I believe the bar for preservation is necessarily low because this court has a strong policy of resolving cases on the merits. Because we want to get the right answer. Because we do not want to hang equity on a technical failure of a counsel to follow best practices. However, counsel's failure to raise at each stage subsequent to the closing argument, the failure of the circuit court, does not excuse the fact that the circuit court, the extent of what the circuit court, even if you were to give the circuit court the benefit of the doubt and say that the question posed during moral argument, that the musings that the arguments are sufficient basis to find a factual determination. That factual determination is nevertheless against the manifest way of the evidence. Justice Dory, to your Honor's point earlier, the amounts that Ms. Beck-Burns had borrowed during the course of the case are debts that were incurred during the course of the marriage. Therefore, these are marital debts that are omitted. Let me ask you something about that, counsel. What were the terms of the loan? What was the interest rate? When was it supposed to be repaid? Was there a promissory note? Does the record reflect any of that? And who owned the money? I couldn't figure it out from reading the record. I just saw a friend. Ms., to my, by my reading of the record, Justice Turner, there were not written promissory notes. However, it was not disputed or tested by a respondent that these funds were borrowed. That there was not a testing of Ms. Beck-Burns to suggest that she did not actually, in fact, borrow these funds while she was not receiving any support from the six-figure earner. Well, the trial court may have inferred, because it doesn't seem like there was any evidence other than her self-serving testimony, that it was a gift, not a loan. Justice Turner, I believe that everybody who testifies on their own behalf has self-serving testimony. However, I do not know if the circuit court chose to disallow, chose to treat the loans as gifts, chose to find that there was insufficient records to support loans, because it did not make any of those findings. Does the record indicate who loaned your client the money? Beyond my client's testimony, Your Honor, there is no record evidence regarding the source of the loans. The indicator was that her friends and family that she had gone to borrow funds from to make ends meet. Now, if the circuit court found that that was not enough, that that was insufficient, that there was not sufficient evidence, it should have so found. However, Justice Doherty, to your point, what we have a specific issue with is that in her pleading, she prayed for maintenance. She filed a petition for temporary maintenance. She ultimately had limited resources to defend an action in Indiana that had no business being there, as well as try and pursue this case to its ultimate conclusion. Ultimately, she got neither temporary support, nor did she have her debts counted, nor did the increase in the 401k between April when grounds were heard, but no order was entered. Grounds were heard. No order was entered. And the appreciation to the time that Mr. Burns' own counsel argued in closing argument, this is the proper valuation, followed his testimony. They suggested it should all be given to her, but they still failed to follow that. What is also absent from the judgment is the value of the tax refunds that Mr. Burns received were testified to be approximately $18,000. Even using Mr. Burns' own valuation for the Paris residence that was awarded to my client, the only asset that was not divided in kind, with the absence of a valuation, presumed that the circuit court used Mr. Burns' valuation, approximately $87,000. The testimony was there approximately $46,000 worth of mortgage, leaving approximately $40,000 worth of equity. His $18,000 in tax refunds alone means that there was not a disproportionate share... Wait a minute. I thought Respondent was ordered to pay the mortgage. The Respondent's payment of the mortgage is out of his payment of maintenance to Ms. Burns. I'd like to answer Justice's question. I know my time has expired, but... You may answer the question. Justice Turner, one of the things that we think is particularly problematic and highlights how the circuit court knew she didn't have the ability to support herself, his own maintenance payment is used to secure the mortgage obligation that he is under because she doesn't have the ability to refinance. He gets to reduce his maintenance payment by the mortgage payment that he's making. Presumptively, he also gets to deduct the mortgage interest deduction because the payments is in his name, further lessening the burden on him for these maintenance payments that would otherwise be non-deductible. Justice Turner, it is not that he is paying the maintenance. He is using her money to pay the mortgage instead of paying her directly. Instead of writing her a check and her writing the bank a check, he writes the bank a check directly and reduces his check to her by the amount that he writes to the bank. This further contributes to why awarding her a below guideline order under anybody's calculation is erroneous under any standard. Thank you, Judge. We'll hear from you in rebuttal. Thank you, Justices. I forgot to ask, are you both going to argue? Yes. And you've split in time? Yes. I'm going to address the... Introduce yourself for the record, I'd be able to do that. I'm Tom Weisman from Danville. Thank you. May it please the Court, Honorable Counsel, Justice, it's a great honor to be here and argue before you today. And this should be affirmed. And here's why. The Court, and I think it all boils down to, first of all, let me just say initially here, as far as the mortgage, the husband's name is on the mortgage. And I think that's why he wanted to pay the mortgage to make sure it got paid, because his name is on the mortgage. And I think that the Court... But that's different than saying it comes out of her maintenance payment. He could still pay it. But the way it's structured is it comes out of her maintenance payment. So really, she's paying it. Well, that's correct. And we're not disputing that that's what the Court did. But I think that the reason the Court... If you look and see, it makes perfect sense what the Court did here. The reason that the Court was trying to do something to where she would own the Paris house, that was where she was living. In fact, there's even a mentioning, there's actually a mentioning where the Court says, why, give me a good reason why I shouldn't divide this up just like all these other marital assets. And counsel says, because she's living there. His client was living there. And so it makes perfect sense. And so... But then to go from that to thinking, well, she's got a disproportionate share, which sounds like that's at least in the air of the Court's thinking. Then we need to know, well, how much was the value of it? What is the statutory maintenance guideline? And then to compare whether those two, more or less, make some sense. Trial Court didn't make those findings. Statute says, you're supposed to make those findings. Where does that leave us? Well, I would disagree. I think that the Court did make those findings. I don't think that he made them exactly like what is done in some other cases. But I still think he followed within the law, the case law of the state of Illinois. Okay, so tell us what the Court found as to the guideline maintenance number. And tell us what the Court found as to the Paris property value. The Paris property value was $87,000. And that was testified to by our client. And that was based on, I think, tax records. And there was, I believe, a $47,000 mortgage against the Paris property. Are tax records a good indicator of the actual fair market value of a home? That's what the evidence was. And there was no dispute about it. I'm not asking if that's what the evidence was. I'm asking, in your experience, is that a good estimate of the fair market value of a home? Yes, I believe it's some evidence of the home. I agree, it's some evidence. But I don't know that very many realtors would agree with you. Right. What do the cases say about that question? Can you use the tax records? Is it appropriate for the trial court? Would it have nothing else in this, for example, like in this case? Yes, well, and I can't cite you a case, but I think that the case law is that the party, the owner, and he was the owner of the property, can testify as to the value of the property. Well, she lived there. I'm sure the case law says that she can give an opinion as to what the value of the property is or was. But that didn't happen here, did it? No, she did not present any kind of evidence of value. It was just the husband. I thought this was kind of a stretch, but she did indicate that, in her view, the property needed about $30,000 worth of repairs or renovation or something like that. Is that accurate? Did she have an estimate of that? No. No? No, she didn't have that. It was just her self-serving testimony, as far as that there were $30,000 of repairs were needed. Well, counsel said if you testify in your case, it's self-serving. That's probably a good point. I think if I were testifying, I'd testify favorably to myself. No, I understand. But there was no documentation or anything or no pictures or anything other than her testifying that those were the repairs. Right. But do we know whether the trial court accepted that testimony, or are we left guessing? Yes, the trial court obviously, I think it was a matter of credibility, the trial court obviously gave more credibility to the husband's testimony over the wife. Right, but they're actually on two different points, so there's no conflict. The husband said it's worth $87,000 according to the assessor's records, which wouldn't take into account some of these things, right? She says there's more repairs to be done. I still don't know whether the trial court agreed or didn't agree about the repairs affecting that value. But the trial court had to do something. He had to do something. He can't go out and do it himself. According to what the statute says, right? He can't go out and do it himself or hire investigators to go out? No, but he's got to make a finding based on what the evidence is. If he's going to depart from the maintenance guidelines, he's got to tell us what they are and he's got to tell us why. And I don't know what they are. And I don't know the value of the things that he might have used to depart from. It's my assertion that what we had here was we had obviously the two parties. So he testified as to the value of the Paris house and his 401K, which were the biggest assets of the marriage. Both sides submitted computations on maintenance. The wife's attorney calculated both ways, imputed income and no income. And our side calculated it with imputed income. And the reason for doing that is because I think the record bears it out that she did not establish that she had any health problems that couldn't allow her to work and so forth. I wonder which one the trial court picked. And so the court said, well, the trial court picked his own. Because he offset it by the unequal distribution of assets. I believe that's correct. But we don't have a value of those assets. Other than inferring that, well, he must have accepted the husband. Well, we have testimony as to all of those factors. And he says at one point, he says, I'd like to hear your thoughts on deviating from the strict maintenance calculations  We don't know how much more generous because we don't know the value of the asset. At least the court hasn't given us a number. The court came up with $1,000 as far as the maintenance award. But our assertion is there's sufficient facts for the court to come up with it, and that's the best that he could do under the circumstances. It would necessarily be ideal, perhaps, perhaps not. But I would like to cite to the court the case of Bloom v. Koster, 235 Illinois 2nd, 37, and entering marriage of suite 316 L.F. 3rd, 101. And in that case, entering marriage of suite was a child support, double child support. But it said, it's the same concept. I mean, the court, you know, it starts out by saying, you know, the court must make express findings if it deviates from the guidelines. However, the requirement of express findings does not mean that the findings must be written or incorporated into the court's order. Has the statute changed since that case? The statute, these cases haven't been overruled, though. That may be what we're talking about today, but has the statute not changed and required the findings that those courts said were unnecessary? No, I don't believe that. I believe that the specific findings were made by this court, this trial court. They were made, you know, they may have not been sequentially, you know, listed off or anything, but they were made in his questions with clients, with the attorneys, back and forth and so forth, and his comments, you know, as far as the values. And then he sized up the party's credibility and made his decision. And he made it based on the fact that he deviated based on the fact that she was getting a more, you know, generous award of assets. What was the court's decision on interim maintenance? On interim maintenance, I'd like to defer to Ms. Hussman-Rogers. Thank you. Thank you. My associate, Tom, thank you for beginning this with us. I'll start where he just left off. Can you just repeat your question? You said? What did the court do on interim maintenance? So with respect to an interim maintenance, or I'm assuming you're referring to a temporary relief status. Yes. As the trial court attorney for this case, what I can tell you happened, whether the record speaks volumes of it or not, I'm not clear. I think we're limited to what's in the record. What does the record tell us? So what the record would show you is that she filed a petition in 2019 and then basically did nothing with it. Didn't pursue it, was not aggressive, didn't set it for hearing. When we finally set these matters for hearing, when he had retained me as his counsel, then we began trying to set this for trial and simply resolving all the matters. We tried to have a trial in April. We only got through the grounds. We tried to have two more trials after that. She requested continuances. First one was with my consent. The second one was over our objection. The third one was the day we had the hearing. At none of those times did she say, I want temporary relief to be heard. She never addressed those issues. At the end, it's moot, right? Because it's no longer temporary. So what did the court do with retroactive maintenance for the date of the petition? Sorry. I believe what the court did and what the record shows is that rather than addressing it retroactively, it took the 251 months that she would be entitled to it, and it did that future focused. So rather than giving her a portion of what she may be entitled to by those guidelines, when doing those equations, he gave her an amount, and he did that retroactively, and he chose not to provide any retroactive maintenance to her. And what amount was that? The amount that he identified was the 1,000. He was provided three calculations. He looked and assessed those three calculations. He inquired with both of us if we had any questions before he made his addressment. After no one had any further questions, I think he assessed the three numbers that were not disputed by the counsels, and he made the determination to then set it at the 1,000. So in that future maintenance award also includes retroactive maintenance? I think it does not. I think he simply did not give her any retroactive maintenance. He awarded her 1,000 for 251 months, which is what the statute would provide based on the years of marriage that they were engaged in. And when you're looking at those guidelines, just to kind of follow up on that, there's been an argument that these specific findings weren't made with respect to the downward deviation. But if you go along those same lines, it's almost like he's shooting himself in the foot at that, because I guess he would argue then there wasn't really a specific finding with respect to that maintenance was entitled at all, because that also requires a specific finding. And in this case, I believe the oral argument and the oral communication that the court gave with both of us, he was making those findings, giving us an opportunity to address any objections or concerns that we had, and in doing so, identifying what his position was. He had taken into account the credibility of both of the parties, their testimony, what they were able to present that day. He had taken into account the three calculations that were provided to him. The only concrete information that he was given with respect to the valuations was that was from Mr. Burns at the county assessment of 87,000 and 46,000 was owed. He took what information, the court took what information it had, applied its guidelines, and made its determination from there. Just one last question on the retroactive maintenance. Is your argument that the maintenance was carried out farther in time to make up for the retroactive period? No, sir. I'm saying that they applied the guidelines by doing that mathematical equation. So she never got maintenance during the time prior to the... But one would also look, if she would have gotten a retro maintenance, then it would have been less than 251 months, because you're only entitled to 251. That's what I was asking. Correct. So I'm sorry if I didn't answer that correctly. So I believe he gave her the entirety of the time frame that she was entitled, but he did not do so with anything retroactive. Counsel, let me ask you a question about the retroactive maintenance. I thought she abandoned her request for that by saying, in lieu of it, I want reimbursed for this $25,000 loan, which there's no evidence of. And literally, that is the only time during the entirety of this trial that even the retro was even mentioned. It wasn't argued during the trial. It wasn't argued in his closing other than one sentence. Hey, will you give us $25,000 in lieu of retro? I'm just going to throw that out there. It's kind of like you threw it, see what would stick. And I think the court had heard the testimony. It had assessed the credibility, having that opportunity to see and hear and observe the language of each of the parties, body language and the presentation of their testimony. And it made a determination that, number one, a friend who gave me a loan that I have no documentation, there is no written contract, there's no one here even acknowledging they gave it to her, or that it actually was even given to her, was not credible testimony to award her that amount of money. That's a great argument to support the court finding. I don't find that credible. Okay. But we're kind of guessing because he never commented. I understand. And our position, and I think he's quoted some of that case law, is when you talk about, you know, we're hanging our hat on the concept that the oral comments, the questions that he asked, identifying, I plan to give a generous portion to her. And also, I think the court heard his argument, and he was trying to accommodate what Dana Beckberg wanted. She wanted the Paris house, and she wanted some financial assistance. And he did so by identifying, okay, I've heard what you've argued. If I do a more generous portion to you, how do you feel about that? Giving her an opportunity to object to that, which he did not. And then the court therefore tried to accommodate basically what her request was, but also stay within the guidelines. And if I could just switch gears for one moment. The other issues that I just wanted to touch base on from the counsel's argument was with respect to the 401k and the date that was determined, that April 29th date was determined. That was the date that the grounds was heard. I do not believe there was any abuse of discretion there. I believe the statute is very specific in that. The court has that power to make that decision with its discretion as to what that date should be. The court looked at the record. It could see how many continuances we had. It could see when we had started asking for trial. That is the first date we asked for the trial. The only reason that judgment didn't get entered at that date was because she was not signing off on it. And I think the court specifically chose that date after reviewing that record, and there was no abuse of discretion. I would ask that, as the justices, you see it in that same perspective. We've already addressed on the retroactive, and then I would just talk about, again, I think all of the issues with respect to abuse of discretion, I think a key here is the credibility issue between the parties and the information that they were able to bring to the court. And I would ask that after you review all of that information and take into consideration that you find that Judge Sullivan's opinion should be affirmed in this matter. The court addressed the tax refund. The tax refund. So in this scenario, my client, Mr. Burns, had identified repeatedly through his testimony that there was costs that were incurred by him that he had continued to pay, that she was refusing to cooperate with signing those. He gave her an opportunity to sign those in court that day she chose to do so. And then in doing so, the court indicated that should there be any returns, that he would be entitled to receive those returns as a part of the division. I believe he was taking that into account with the fact that she was giving a more generous portion of the home. And I understand that there wasn't a specific identified amount other than the $87,000. But I would ask to you, as a trial court, when you're presented with concrete information, you have to take what's given to you and apply it to the best of your ability with the information that you have, which is what he did. So if he takes that at the $87,000, which I believe he did, is why he's able to identify that that was one of the biggest assets of the parties, and that is the one that he gave her the entirety of that asset. I'm sorry, do you have any other questions? No other questions. Thank you for your time. Rebuttal? Justices, thank you. There are a couple of points in counsel's argument that I want to address directly. And then there is one thing I want to clarify from my statements earlier. The individual was specifically named who had loaned money to Ms. Beck-Burns. It's found in the record on page 58 of the transcript. B-A-U-B-E-I-N. This was never challenged as the last name of the individual who loaned the money. This was never challenged or argued to the contrary. Now turning to Justice Connett, your question of, is the tax assessor value the same thing as paramarket value? It absolutely is not. And while the court in Vucic did identify that an owner value is generally competent to testify to the, or an owner of land is generally competent to testify to the value, there are limitations. Respectfully, Justices, an individual who has not walked the land, not had the opportunity to see the property that he is valuing, that takes a tax assessor value without any regard to condition, is not competent to testify to the evidence of value. Counsel suggested there was no contrary evidence of valuation. C-84 is her financial affidavit page where she lists her opinion of value. That's not an evidence, is it? I believe her financial affidavit was entered into evidence. I know it was in the common law record. Was it tendered as an exhibit at the hearing? Tendered, I don't have the answer to speak to the Justices today. I believe it was. I believe that it was accepted into evidence. However, I don't want to misstate to your honor. What was entered into evidence was E-2 through E-12, which were pictures of the repairs that were necessary to be done to the house. It was in addition to her testimony. However, you do not have to accept her testimony that there were the necessary repairs to find that a disproportionate share was not awarded to her. You do not have to find that the loans that she testified to were legitimate to find that a disproportionate share of the assets was not awarded to her. If you accept his valuation and you accept the mortgage, then you have $40,000 of equity approximately. His receipt, as counsel acknowledged, of approximately $18,000 in tax refunds means that there was not a disproportionate share, or at most we're talking about $2,000. That even leaves aside the increase, as counsel argued in her closing argument, should be included at the record at page 110 through 111 in his 401k. Counsel argues you should use the present value of his 401k. The court ignores the marital increase. Until the time they are divorced, it is marital property. Therefore, there is marital property that is not acknowledged in the judgment. And Justice Doherty, to your honor's points repeatedly, we are speculating as to why the court did what it did. There were no credibility findings. I heard counsel say credibility, credibility, credibility. There were no credibility findings. The circuit court did not find her incredible in her testimony. The circuit court did not find him credible. It didn't find anything. It didn't make findings specific or otherwise. There were no property valuation findings that were made. And in the absence of property valuation, in the absence of competent value, the court divides the property in kind as it did with every other piece of property. However, we certainly know that it was no basis. 251 months, your honors, 251 months, which is not what the max the court could have done. The court could have done indefinite maintenance. They married over 20 years. The court in its discretion could have awarded indefinite maintenance. However, 251 months, when she calculates the guideline is $1,900 using everybody's actual income, and the court takes that in half, it has awarded him approximately $251,000 in savings, in reduction beyond what our legislature thinks is equitable. That is more than the entire rest of the estate combined. That division would not have been borne out, even if you did give him a disproportionate share of their minimal assets. By far and away, maintenance was the most valuable financial right to a woman who had been nothing more than the teacher to their special needs children, the mother, the housewife, the individual who relied on her six-figure earning husband for a period of more than two decades. He had more than sufficient income. As he testified, he doesn't have to ask his girlfriend for rent for the house that they share together. He doesn't have to ask her for payments for her share of things. He's able to cover it apparently himself. He has the ability to pay. She absolutely lacks the ability to support herself. And for the more than two decades that these two were married, this is how they chose to live their life. The obligation for Mr. Burns to pay guideline maintenance is not only moral, it is set forth in our statute. It's set forth through our legislature. It is in our public policy of our state that we want to make reasonable provisions for spouses following divorce. And when Ms. Burns, whether she is imputed income or not, cannot pay her bills on imputed income, maintenance in this case is more necessary than in any other case that your honors will hear this case. Do you remember what the real estate taxes were on the pair's property? I do not off the top of my head, Justice. Counsel, I want to say something. Sometimes I think trial judges are faced with whatever is dumped in their lap and try to make a decision. In this case, I think the trial court had this dumped in his lap. I don't know Judge Sullivan, and I only know Ms. Rogers has noted that she was counsel in the trial court. So I'm thinking this is a general observation. Then a judge dumps it with us. That's effectively what's happened. And I disagree with your point about the distinction between jobs. I think as an officer of the court, every attorney has an obligation to try to make sure the judge follows the law. And asking for the judge to make findings is not offensive. It shouldn't raise the hackles of any judge that has any understanding of the law, and I think that would have saved us a lot in this case for that to have been asked and perhaps the judge to have been guided. I don't know. He may be new on the bench or new to matrimonial law, but you don't see very many cases like this where you don't find valuations. Thank you. Matters under advisement. Thank you.